NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH ALICEA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　　　　Defendant. | Civil Action No.: 13-cv-7302<br><br><br>**OPINION** |

**CECCHI, District Judge.**

## I.　　**INTRODUCTION**

Deborah Alicea ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed in part, vacated in part, and remanded.

## II.　　**BACKGROUND**

### A.　　**Procedural History**

Plaintiff applied for disability insurance benefits under Title II ("DIB" or "Benefits") from

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

the Social Security Administration ("SSA") on January 13, 2011. (R. 12.) Plaintiff's application alleged disability beginning on September 13, 2008. (R. 57.) Plaintiff's claim was denied initially on March 23, 2011 (R. 63), and denied after reconsideration on August 1, 2011. (R. 73.) Plaintiff subsequently requested an administrative hearing on August 17, 2011. (R. 85-86.) The ALJ held a hearing in this matter on May 11, 2012. (R. 25.) In a written opinion dated May 22, 2012, the ALJ determined that Plaintiff was not disabled. (R. 21.) On July 19, 2012, Plaintiff requested a review of the ALJ's decision. (R. 7.) On October 1, 2013, the appeals council denied review, rendering the ALJ's decision the final judgment of the Commissioner. (R. 1.) Plaintiff then timely filed this action.

### B.    Personal and Employment Background

Plaintiff was 44 years old at the onset date of her alleged disability. (R. 57.) Plaintiff's submitted employment history includes employment as: (1) a mail carrier for the United States Postal Service from May 1988 to September 2008; and (2) a part-time doorkeeper for Applied Concierge LLC from 2007 to 2008.[2] (R. 19; 32; 142; 147.) Plaintiff completed school through twelfth grade. (R. 147.)

The Vocational Expert at Plaintiff's hearing before the ALJ characterized Plaintiff's mail carrier work as medium, semi-skilled work. (R. 49.) The Vocational Expert characterized the doorkeeper work as medium, unskilled work. Id.

### C.    Medical Background

---

[2] Plaintiff's Disability Report mentions only the mail carrier position. (R. 145-153.) However, Plaintiff testified at her hearing before the ALJ that she worked as a doorkeeper for two years, and the Record shows she received income from Applied Concierge LLC in 2007 and 2008. (R. 142.)

2

Plaintiff claims she suffers from orthopedic, neurological, and psychiatric conditions. (Compl. ¶ 5.) Specifically, Plaintiff claims she has depression as well as knee and back impairments that limit her ability to work. (R. 29; 53-54.) Additionally, Plaintiff claims her thyroid condition, hypertension, and Barrett's esophagus limit her ability to work. (R. 146.)

Plaintiff had surgery on her left knee at the end of 2008 and surgery on her right knee at the end of 2009. (R. 29; 33.) At her hearing, Plaintiff was questioned about her knee surgeries. Plaintiff testified that she suffers pain and swelling in both knees. (R. 38.) She claims that she must use a cane to ambulate around her home, or wear braces that support her knees and prevent her from falling. (R. 39-41.) Plaintiff testified that she suffers pain in her back and knees when sitting for longer than one hour, and that the pain is only relieved by elevating her legs and icing her knees. (R. 43-44.) Plaintiff testified that she sees her doctor every three to six months, and sometimes has her knees drained if they are excessively swollen. (R. 37-38.) Her doctor has recommended total knee replacement surgery for both knees. (R. 34.)

Plaintiff stated that she spends most days at home by herself, and passes the time by napping, watching TV, or talking on the phone. (R. 46.) She alleges she is unable to do household chores such as laundry, cleaning, or vacuuming. (R. 39; 47.) Her son, with whom she lives, helps her take care of the apartment. (R. 38.) Her sister also visits and helps. Id. Plaintiff further testified that she does not have a car, but her sister drives her "pretty much" everywhere. (R. 39.) She also stated that her sister and friends take her grocery shopping and on other errands. (R. 39.)

Plaintiff first reported right knee pain to Dr. Mitchell Steinway in July 2008. (R. 231.) On August 26, 2008 she presented to Dr. Charles Granatir with complaints of left knee pain caused by playing basketball. (R. 207; 210.) An MRI of her left knee revealed a meniscus tear and joint effusion. (R. 201-202.) On September 9, 2008, Dr. Granatir recommended arthroscopic

3

meniscectomy of Plaintiff's left knee, noting that she would be restricted from working for "an estimated 4 weeks." (R. 216.) The procedure, performed on September 27, 2008, revealed "a large osteochondral injury to the lateral femoral condyle." (R. 278.) Due to the unpredicted injury, Dr. Granatir revised his prognosis and estimated that Plaintiff would be restricted from working for "approximately 3 months." (R. 230.)

About one month after her surgery, on October 23, 2008, Plaintiff had a follow up visit with Dr. Granatir and reported pain in both knees. (R. 231.) Dr. Granatir noted that she could "be full weight bearing" and that she could "[r]eturn to work when she feels able." (R. 234.) On November 21, 2008, Dr. Granatir stated that Plaintiff could "return to work light duty" with "limited walking" as of December 1, 2008. (R. 239.) On December 12, 2008, Dr. Granatir aspirated Plaintiff's left knee to reduce her swelling and pain. (R. 249.) Dr. Granatir noted that Plaintiff was "disabled from work indefinatly [sic]." (R. 244.) Accordingly, Plaintiff never returned to work. (R. 32.)

Plaintiff was examined by Dr. Granatir on September 18, 2009 for complaints of new pain in her right knee and continuing pain in her left knee. (R. 254.) Dr. Granatir again aspirated the left knee, and ordered an MRI of the right knee. (R. 257.) The MRI revealed a meniscus tear and "degenerative spending," and Dr. Granatir recommended an arthroscopy. (R. 258; 261.) Plaintiff had her right knee arthroscopy on November 8, 2009. (R. 272.)

On November 17, 2009 Dr. Granatir prescribed a "lateral OA brace" for Plaintiff's left knee, and recommended "total knee replacement if conservative treatment [was] not successful." (R. 269.) At a follow up on February 18, 2010, Dr. Granatir also prescribed a lateral OA brace for Plaintiff's right knee (R. 275.) A year later, on February 14, 2011, Plaintiff was examined by Dr. Granatir for complaints of bilateral knee pain, and Dr. Granatir recommended bilateral total knee

4

replacement if other treatments did not work. (R. 364.)

Plaintiff was also examined by Dr. Jean Messihi on November 20, 2010 for complaints of "fatigue, weakness, [and] stomach issues." (R. 352.) Dr. Messihi diagnosed Plaintiff with obesity, chronic lymphocytic thyroiditis, benign essential hypertension and "other malaise and fatigue." Id. Plaintiff also presented to Dr. Aylon Glaser on April 8, 2011 with complaints of hoarseness and throat pain. (R. 381.) Dr. Glaser noted Plaintiff's history of Barrett's esophagus, sleep apnea, her thyroid lobectomy and biopsy of various nodules. Id.

On September 7, 2011, Dr. Roel Galope performed an MRI exam of Plaintiff's lumbar spine. (R. 408-409.) Dr. Galope noted a history of disc herniation and "desiccation of the disc with mild loss of height" at L2-L3, L3-L4, and L5-S1. (R. 408.) Additionally, Dr. Galope noted arthritic change of the L3-L4, L4-L5, and L5-S1 facet joints. Id. The L2-L3 and L3-L4 desiccated disc protrusions minimally indented the thecal sac, and were not present during Plaintiff's previous examination in 2003. (R. 408-409.) The Record shows Plaintiff was fitted with a lumbosacral corset on September 15, 2011, and prescribed medication to treat her back pain. (R. 407.)

Regarding her mental health, Plaintiff testified that she has seen both a psychologist and a psychiatrist for her depression. (R. 44.) Plaintiff stated she had therapy twice a week for about three months but could no longer afford it. (R. 45.) Plaintiff alleges she has anxiety, depression, problems with crying, and difficulty sleeping at night. Id.

Plaintiff had an initial meeting with psychiatrist Dr. Lina Shah on September 8, 2011. (R. 412-413.) Dr. Shah noted Plaintiff had been diagnosed with various medical conditions which have "exacerbated her depressive symptoms." Id. The symptoms included "excessive crying, poor sleep, low motivation/interest, emotional eating and fearfulness." Id. According to Dr. Shah, Plaintiff's treatment was inconsistent because of financial constraints. Id. Dr. Shah diagnosed Plaintiff with

"Major Depressive Disorder, single, moderate." <u>Id.</u> After her initial meeting, Plaintiff was treated by Dr. Shah on September 22, 2011, November 21, 2011, and February 6, 2012. <u>Id.</u> Additionally, Plaintiff saw Brenda Davis, LCSW, for individual psychotherapy on September 12, 2011 and October 13, 2011. <u>Id.</u> In a letter written on April 18, 2012, Dr. Shah stated that Plaintiff should "continue regular medications and psychotherapy appointments." <u>Id.</u>

On February 23, 2011 and June 22, 2011, Dr. Angelo DeMarco submitted general medical reports regarding Plaintiff's health. (R. 367-369; 401-403.) The reports listed Plaintiff's severe pain in both knees and slow walking speed. (R. 401.) However, Dr. DeMarco declined to provide an opinion regarding Plaintiff's ability to work. (R. 368; 402.) On July 22, 2011, Dr. Margret Ciechanowska submitted a general medical report regarding Plaintiff's health. (R. 404-406.) Dr. Ciechanowska's report details Plaintiff's thyroid conditions and Barrett's esophagus. (R. 404.) However, Dr. Ciechanowska also did not provide an opinion regarding Plaintiff's ability to work. (R. 405.)

## III.   <u>LEGAL STANDARDS</u>

### A.    **Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Courts are not "permitted to re-weigh the evidence or impose their own factual determinations," but must give deference to the administrative findings. <u>Chandler v. Comm'r Soc. Sec.</u>, 667 F.3d 356, 359 (3d Cir. 2011); <u>see also</u> 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the Record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. <u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual

Record is adequately developed, substantial evidence "may be 'something less than the weight of

the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does

not prevent an administrative agency's finding from being supported by substantial evidence.'"

Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting

Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential

standard of review, the Court may not set aside the ALJ's decision merely because it would have

come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007)

(citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

> **B.     Determining Disability**

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured

status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must

show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account

the claimant's age, education, and work experience, disability will be evaluated by the claimant's

ability to engage in her previous work or any other form of substantial gainful activity existing in

the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical

or mental impairments must be "of such severity that [she] is not only unable to do [her] previous

work but cannot, considering [her] age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A),

1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on

evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has a severe impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 262 n.2.

IV.   **DISCUSSION**

8

Plaintiff raises three objections to the ALJ's decision. First, Plaintiff argues the ALJ erred at step three by failing to properly compare Plaintiff's impairments to the Listings. Next, Plaintiff argues the ALJ erred in determining her RFC. Finally, Plaintiff argues the ALJ erred when questioning the Vocational Expert at her hearing. Because the Court finds the ALJ erred at step three and at the RFC determination, the decision will be vacated in part and remanded.

## A.   The ALJ's Step Three Analysis

Plaintiff argues the ALJ erred at step three in two ways. First, Plaintiff argues the ALJ erred by failing to consider Plaintiff's obesity alone and in combination with Plaintiff's other impairments. (Pl. Br. 31-33.) Second, Plaintiff argues the ALJ failed to consider the combined effect of all her impairments. (Pl. Br. 28-31.)

As to the first argument, the Court finds that the ALJ did not adequately consider Plaintiff's obesity. SSR 02-1p states that "[the Commissioner] will find that obesity is a 'severe' impairment" when it significantly limits an individual's ability to do basic work activities. SSR 02-1P (S.S.A. Sept. 12, 2002). Additionally, the Commissioner may find that obesity in combination with other impairments may be equivalent to an impairment in the Listings. Id. An ALJ must meaningfully consider a plaintiff's obesity, individually and in combination with other impairments, at step three and every subsequent step of the disability analysis. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). Meaningful consideration requires that the ALJ "set forth the reasons for [her] decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 704-05 (3d Cir. 1981). Thus, an ALJ must "provide a 'discussion of the evidence' and an 'explanation of reasoning' for [her] conclusion sufficient to enable meaningful judicial review." Diaz, 577 F.3d at 504 (citing Burnett, 220 F.3d at 120).

The Court agrees with Plaintiff that the ALJ's step three analysis of obesity is deficient.

After finding that Plaintiff's obesity is a severe impairment, (R. 14), the decision continues to step three where the ALJ finds that Plaintiff has no impairment or combination of impairments "that meets or medically equals the severity" of an impairment in the Listings. (R. 15.) The ALJ's entire obesity analysis consists of the following:

> Although there is no specific medical listing regarding obesity, I have evaluated [obesity] herein pursuant to the extensive and detailed guidelines set forth in SSR 02-01p, including the references in the listings contained in section 1.00Q, 3.00I, and 4.00F . . . . Accordingly, I have fully considered obesity in the context of the overall record evidence in making this decision.

(R. 15.)

There is no other mention of obesity throughout the ALJ's step three determination. (R. 15-16.) Significantly, this obesity analysis is almost identical to the analysis rejected by the court in Padilla v. Astrue. No. 10-CV-4968, 2011 WL 6303248, at *7 (D.N.J. Dec. 15, 2011). In Padilla, the court found the ALJ erred because the analysis was conclusory and did not "allow for meaningful judicial review." Id.; see also, Moore v. Comm'r of Soc. Sec., No. CIV. 2:11-05369 KM, 2013 WL 941558, at *4 (D.N.J. Mar. 8, 2013) ("A blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence and clearly setting forth the reasons for his decision as Diaz and Burnett require.") Here, the ALJ's consideration of obesity is also merely a conclusory statement, which evades any meaningful judicial review. Diaz, 577 F.3d at 504. Accordingly, the Court finds that the ALJ erred by failing to meaningfully consider Plaintiff's obesity.

Because obesity may be found to exacerbate Plaintiff's knee, back, and mental impairments, the Court does not address the parties' arguments regarding the ALJ's consideration

of those impairments.

For the foregoing reasons, the Court finds the ALJ erred at step three. Therefore, the court will vacate the ALJ's step three analysis, and remand this matter to the Commissioner for further development of the Record. On remand, the ALJ should reconsider Plaintiff's obesity, alone and in combination with all of Plaintiff's other impairments.

### B.     The ALJ's RFC Analysis

Plaintiff argues that the ALJ's RFC analysis was inappropriate in three ways. First, Plaintiff argues the ALJ erred by failing to consider Plaintiff's obesity, alone or combined with her other impairments. (Pl. Br. 14-18; 31-32.) Second, Plaintiff argues the ALJ erred by refusing to credit her subjective complaints of pain and swelling. (Pl. Br. 24-28.) Third, Plaintiff argues the ALJ erred by failing to properly detail her mental limitations in her RFC determination. (Pl. Br. 19-22.) The Court will address each argument in turn.

### 1.     The ALJ's Obesity Consideration

Plaintiff alleges that the ALJ failed to properly consider her obesity by itself or with her other impairments in the RFC determination. (Pl. Br. 10; 14-18.) Defendant argues that obesity was clearly and sufficiently addressed by the ALJ prior to the RFC determination. (Def. Br. 5-6.)

The Court finds that the ALJ's consideration of Plaintiff's obesity does not meet the standards of SSR 02-1p. As noted above, obesity must be given meaningful consideration at step three and at every subsequent step, including the RFC determination. Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009). Defendant relies on Rutherford, where the Third Circuit found no error despite the ALJ's refusal to consider obesity. Rutherford v. Barnhart, 399 F.3d 546, 552 (3rd Cir. 2005). In Rutherford, however, the claimant "never mentioned obesity as a condition that contributed to her inability to work." Id. at 553. The Third Circuit distinguished

Diaz from Rutherford precisely because the claimant in Diaz "asserted – and the ALJ specifically determined – that obesity constituted a severe impairment." Diaz, 577 F.3d at 504. Thus, where a claimant asserts, and the ALJ finds, that obesity is a severe impairment it must be given meaningful consideration at step three and every subsequent step. Id.

Here, as in Diaz, the ALJ specifically found that obesity was a severe impairment at step three. (R. 14.) Despite that finding, the RFC determination is devoid of obesity analysis. (R. 16-17.) The ALJ's RFC determination therefore runs afoul of the Third Circuit's requirement that obesity be meaningfully considered, individually and in combination with other impairments. Diaz, 577 F.3d at 504. Accordingly, the Court finds that the ALJ erred in her RFC determination.

The Court will vacate the RFC determination and will remand the case with instruction to reopen the Record to determine obesity's effect on Plaintiff's RFC. On remand, the ALJ should consider the interplay between obesity and joint dysfunction, which is specifically underscored by SSR 02-1p. See Diaz, 577 F.3d at 504.

### 2.    The ALJ's Consideration Of Plaintiff's Subjective Complaints

In evaluating a claimant's testimony regarding symptoms and pain, an ALJ proceeds in two steps. In the first step, she must determine whether there is a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929. When impairment is found, at the second step the ALJ must evaluate a claimant's subjective statements in relation to the objective evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); See Holley v. Colvin, 975 F. Supp. 2d 467, 479-80 (D.N.J. 2013) ("[T]here must be objective evidence of a condition that could cause the pain alleged."). When performing this second evaluation, the ALJ must assess (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3)

factors that precipitate and aggravate the symptoms; (4) medications, treatments, or other measures the claimant takes to alleviate the symptoms; and (5) any other relevant factors. SSR 96-7p.

At the first step, the ALJ found medically determinable impairments. At the second step, the ALJ found Plaintiff's subjective claims regarding disability were not fully credible. Plaintiff argues that the ALJ improperly discredited her subjective complaints of pain with respect to her back and knee impairments. (Pl. Br. 27-28.) Defendant argues that the ALJ properly considered inconsistencies in Plaintiff's testimony when discrediting Plaintiff's claims. (Def. Br. 16-17.)

With respect to Plaintiff's back and knee pain, the Court agrees with the Commissioner. The ALJ specifically considered Plaintiff's medical history regarding her knees when assigning Plaintiff an RFC with a sedentary exertional level. (R. 16.) The ALJ considered Plaintiff's daily activities (R. 17 ("[S]he helps her son get ready for school, watches television, naps, sees her sister, and may see some girlfriends.")); Plaintiff's bilateral knee surgeries (R. 17-18); Plaintiff's treatment, including physical therapy and possible knee replacement surgery (R. 18); and Plaintiff's use of a cane when ambulating without knee braces. (R. 18 ("She testified she uses a cane in her home.")). The ALJ also considered Plaintiff's subjective complaints of knee pain. (R. 17 ("She said she has pain when she sits and she can sit for an hour.")) Regarding Plaintiff's back impairments, the ALJ considered Plaintiff's lumbar spine injuries. (R. 18.) Specifically, the ALJ discussed Plaintiff's thecal sac impairments at L2-L3, L3-L4 (R. 18); Plaintiff's treatment with a lower spine corset and pain medication (R. 18); and Plaintiff's MRI results showing additional impairments of the lumbar spine. (R. 18.)

With respect to Plaintiff's credibility, the ALJ found that Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were "not credible to the extent they are inconsistent" with the RFC determination. (R. 17.) SSR 96-7p requires that an ALJ

13

"give specific reasons for the weight given to the individual's statements" when making a credibility determination. See also Breslin v. Comm'r Soc. Sec., 509 F. App'x 149, 153-154 (3d Cir. 2013) (finding an ALJ properly relied on doctors' reports that contradicted claimant's testimony regarding alcohol abuse). "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record." SSR 96-7p. Thus, where a claimant's testimony contains inconsistencies an ALJ may conclude that some of their claims are less than fully credible. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 146-148 (3d Cir. 2007). Here, the ALJ noted Plaintiff's inconsistent testimony regarding her swimming habits. (R. 19.) Indeed, Plaintiff testified at the hearing in May 2012 that she had not been swimming since 2008. (R. 47-48.) Plaintiff emphasized that she had not been swimming, and claimed her doctor misunderstood the timeline. (R. 48.) However, the Record clearly shows – and Plaintiff now admits – that she was trying to lose weight by swimming on September 15, 2011, (R. 407), and that she was having shortness of breath when swimming on March 28, 2012. (R. 415.) As noted above, such inconsistent statements allow an ALJ to conclude that the Plaintiff's claims are not fully credible. Salles, 229 F. App'x at 147. Accordingly, the ALJ's determination that Plaintiff's testimony was not fully credible is supported by substantial evidence.

The Court therefore finds that the ALJ properly considered the Record when declining to fully credit Plaintiff's subjective complaints. There was no error in the ALJ's credibility determination. Accordingly, the ALJ's findings are affirmed on this point.

### 3.    The ALJ's Consideration Of Plaintiff's Mental Impairments

Plaintiff argues the ALJ's RFC determination should be vacated because her mental impairments were not properly considered. (Pl. Br. 19-23.) Specifically, Plaintiff alleges the ALJ's decision makes "no attempt to bridge the gap" between Plaintiff's depression and the asserted

14

capacity to work. (R. 23.) The Court disagrees.

The ALJ adequately explained her reasons for limiting Plaintiff to sedentary work with additional limitations. (R. 16.) The ALJ discussed Plaintiff's testimony that she "cries daily and has difficulty sleeping at night due to anxiety and pain," and that "she sleeps a couple of hours at a time." (R. 17.) The ALJ also considered Plaintiff's depression, her treatment with Dr. Shah, and her other therapy sessions. (R. 18.) Additionally, the ALJ explained how Plaintiff's mental impairments factored into her RFC determination limiting Plaintiff to "simple, one or two step instructions, and simple work related decisions." (R. 16; 19 ("…the simple unskilled nature of the jobs described in the residual functional capacity accounts for any issues she may have with concentration due to her depression and/or pain caused by her knees and back."). In reconciling the evidence in the Record, the ALJ needs only to set forth the reasons for her decision and does not need to follow a specific formula. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). The Court finds that the ALJ's consideration of Plaintiff's mental impairments was sufficiently detailed and supported by substantial evidence. Accordingly, the ALJ's determination is affirmed on this point.

C.     **The ALJ's Questions To The Vocational Expert**

Plaintiff alleges that the ALJ improperly omitted some of Plaintiff's symptoms from her hypothetical to the Vocational Expert. (Pl. Br. 19-20.) Plaintiff argues the Expert's answers would have been different if all of Plaintiff's limitations were included in the hypothetical. (Pl. Br. 22.) Accordingly, Plaintiff argues, the Expert's response cannot qualify as substantial evidence and the ALJ's reliance on that response was error. (Pl. Br. 22.) The Court disagrees.

An ALJ's hypothetical question to a Vocational Expert must include "*all* of a claimant's impairments" that are medically proven in the Record. Rutherford v. Barnhart, 399 F.3d 546, 554

15

(3d Cir. 2005) (citing Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (emphasis in original). However, an ALJ is not required to submit to the Vocational Expert every impairment asserted by a claimant. Knox v. Comm'r of Soc. Sec., 365 F. App'x 363, 368 (3d Cir. 2010) (citing Rutherford, 399 F.3d at 554). Instead, the ALJ must convey to the Vocational Expert only the claimant's credibly established limitations. Rutherford, 399 F.3d at 554.

The Court is unpersuaded by Plaintiff's argument that the ALJ failed to include her mental impairments in the hypothetical. (Pl. Br. 22.)  Plaintiff relies on Ramirez v. Barnhart, which held that an ALJ's hypothetical that limited claimant to "one to two step tasks" did not adequately portray the claimant's impairments. 372 F.3d 546, 554 (3rd Cir. 2004); (Pl. Br. 21.) But Ramirez can be significantly distinguished from this case. The claimant in Ramirez had a years-long history of treatment for anxiety, depression, social phobia, obsessive compulsive disorder, and mood incongruent hallucinations, and the ALJ found she "often" had deficiencies in concentration, persistence, or pace. Ramirez, 372 F.3d at 548, 554. Here, by contrast, the Record shows Plaintiff has had only inconsistent treatment for depression. (R. 18.) The Record contains no opinion on ability to work from any medical source, and no treatment records regarding her mental impairments other than Dr. Shah's two-page letter to Plaintiff's attorney. (R. 18; 412-413.) Despite the lack of evidence, the ALJ credited Plaintiff's testimony and found she had "moderate" difficulties in maintaining concentration, persistence, or pace. (R. 16.) To account for this impairment, the hypothetical question limited Plaintiff to "simple, routine tasks," "simple, one or two step instructions," and "simple, work-related decisions." (R. 49-50.) In light of the evidence in the Record, the Court finds this hypothetical properly accounted for Plaintiff's mental impairments.

Regarding her physical impairments, Plaintiff's argument is also unpersuasive. Plaintiff

16

contends the ALJ erred by excluding from the hypothetical her cane use and need to elevate her legs. (Pl. Br. 28.) As noted above, the ALJ properly declined to fully credit Plaintiff's allegations based on her inconsistent testimony. <u>See supra</u> Part IV.B.2. Because an ALJ is required to include only credibly established impairments in a hypothetical, the ALJ's refusal to mention cane use or leg elevation to the Vocational Expert is supported by her credibility determination. <u>Knox</u>, 365 F. App'x at 368 (citing <u>Rutherford</u>, 399 F.3d at 554). Consequently, the Court finds no error in the ALJ's refusal to include impairments that she found not credible in the hypothetical.

The Court finds the ALJ did not err when questioning the Vocational Expert. Accordingly, the Court affirms the ALJ's reliance on the Expert's testimony.

V.    **CONCLUSION**

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed in part, vacated in part, and remanded for further findings consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: _December 8, 2014_

_____
**CLAIRE C. CECCHI, U.S.D.J.**